**This document was signed electronically on March 30, 2022, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated:  March 30, 2022**



**ALAN M. KOSCHIK**
**U.S. Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | Case No. 18-52300 |
| AMMAR YASSIN, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | Judge Alan M. Koschik |
| | ) | |

## MEMORANDUM DECISION ON AMMAR YASSIN'S
## <u>OBJECTION TO CLAIM OF ADAIR ASSET MANAGEMENT</u>

On February 5, 2019, debtor Ammar Yassin (the "Debtor") filed an objection (Docket No. 28) (the "Objection to Claim") to Claim No. 1 (the "Claim") of creditor Adair Asset Management ("Adair").  On March 5, 2019, Adair filed its response to the Objection (Docket No. 32) (the "Response"), which was combined with its objection to confirmation[1] of the

---

[1]  Both the Debtor's Objection to Claim and Adair's objection to confirmation of the Debtor's Plan are pending before the Court.  The two contested matters are closely related.  Because the Claim itself depends on application of a complex Ohio statute and most of the briefing addressed the allowance of the Claim, the Court is addressing only the Objection to Claim in this Memorandum Decision.  The Court will promptly schedule further proceedings to consider Adair's objection to confirmation of the Debtor's Plan in light of this ruling.

Debtor's proposed chapter 13 plan (Docket No. 7) (the "Plan"). For the reasons set forth in this Memorandum Decision, the Objection to Claim will be sustained, in part, and overruled, in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court did not conduct an evidentiary hearing in this contested matter. The parties submitted written stipulations to the Court on April 26, 2019 (Docket No. 46) (the "Stipulations"). Neither party requested an evidentiary hearing, and in supplemental briefing after the Stipulations, both Adair and the Debtor stated that there are no factual issues in dispute. (Docket No. 53 at 1; Docket No. 55 at 1.) The factual and procedural record in this case consists of the Stipulations, the Court's docket, and the uncontested factual assertions in the various briefs and exhibits[2] of the parties.

The Debtor is the record title holder of the property known for mailing purposes as 10 E. Tallmadge Ave., Akron, Ohio 44310, which also bears Summit County permanent parcel number 68-11899 (the "Property"). The parties stipulated that the Debtor "was and is" the title holder without specifying the date he became the owner of the Property. (Stipulations ¶ 4.) The Court accepts it as stipulated that the Debtor has been the owner of the Property since at least 2008, the earliest lien year for which Summit County sold the delinquent taxes on the Property to Adair.

On November 15, 2016, and October 27, 2017, respectively, Adair purchased Tax Certificate Nos. 6811899-16 (the "2016 Tax Certificate") and No. 6811899-17 (the "2017 Tax Certificate," and collectively with the 2016 Tax Certificate, the "Tax Certificates") through a negotiated sale with the Summit County Fiscal Officer, regarding property taxes due on the Property. Adair purchased the 2016 Tax Certificate for $44,253.63 with a certificate rate of interest of 12.25 percent and the 2017 Tax Certificate for $4,863.59 with a certificate rate of

---

[2] The only exhibit submitted by either party in briefing was a copy of the Claim, including its exhibits.

2

interest of 18 percent. The 2016 Tax Certificate is for lien year 2008; the 2017 Tax Certificate is for lien year 2016.

On May 30, 2018, Adair filed a request for foreclosure on the Tax Certificates (the "Notice of Intent"[3]) and paid the Summit County Fiscal Officer the sum of $7,435.86, composed of a delinquent property tax claim for tax year 2017 in the amount of $4,435.86 that was due and owing to Summit County and not reduced to a tax certificate, plus the sum of $3,000, the foreclosure fee prescribed by the Summit County Prosecutor for such foreclosure proceedings. This procedure is prescribed by Ohio Revised Code ("O.R.C.") § 5721.37, and provides a mechanism whereby the county prosecutor may be obligated to "commence a foreclosure proceeding in the name of the county treasurer … to enforce the lien vested in the certificate holder by the certificate." *Id.*

On August 1, 2018, the Summit County Prosecutor filed a state court foreclosure action against the Debtor captioned *Kristen M. Scalise, as Fiscal Officer of Summit County, Ohio v. Ammar Yassin, et al.*, Summit C.P. No. VC-2018-08-3184. This action did not reach a final judgment prior to the Debtor's bankruptcy filing, and was stayed by the automatic stay as of the petition date.

On September 25, 2018, the Debtor filed his chapter 13 voluntary petition (Docket No. 1) (the "Petition") and his proposed chapter 13 plan (Docket No. 7) (the "Plan"). In the Petition, the Debtor scheduled the Property with a value of $134,540, and scheduled two secured claims owed to Adair that were secured by the Property. The Debtor scheduled the first secured claim

---

[3] To maintain consistency with the terms used in the briefing and Claim, the Court will use the terms "notice of intent" and "NOI" in this Memorandum Decision, even though, pursuant to O.R.C. § 5721.37, when a tax certificate holder requests the county prosecutor to commence a foreclosure proceeding, the statute refers to the legal instrument as a "request for foreclosure." A "notice of intent to foreclose" is the mechanism through which a certificate holder may commence a foreclosure proceeding using a private attorney rather than the county prosecutor. *Compare* O.R.C. § 5721.37(C)(1) *with* O.R.C. § 5721.37(C)(2).

3

in the amount of $49,853.63 on account of the 2016 Tax Certificate.[4]  The Debtor scheduled the second secured claim in the amount of $5,343.59 on the 2017 Tax Certificate.

On September 29, 2018, Adair filed the Claim, asserting the following principal amounts and interest rates thereon:

| Nature of Debt | Amount | Interest Rate |
| --- | --- | --- |
| Tax Certificate - 2016 | $44,253.63 | 12.25% |
| Tax Certificate - 2017 | $4,863.59 | 18.00% |
| NOI Payment (May 30, 2018) | $4,435.86 | 18.00% |
| Interest Accumulated as of September 29, 2018 | $13,183.47 | 0.00% |
| Expenses | $3,125.00 | 0.00% |
| Total Due: | $69,861.55 | |

On February 5, 2019, the Debtor filed the Objection to Claim.  In his Objection to Claim, the Debtor makes three arguments, each targeting one of the last three itemized components of the Claim:

- The $4,435.86 portion of Adair's payment to the Summit County Fiscal Officer, submitted with Adair's Notice of Intent,[5] which was paid on account of the county's noncertificated claim for unpaid property taxes due on the Property (the "NOI Payment") should not bear interest because Adair did not "perfect[] or record[]" a lien specifically with respect to the NOI Payment at the time it made this payment or at

---

[4]  Both the Debtor and Adair generally refer to this as the "2016" tax certificate, because Adair acquired it on November 15, 2016; however, the lien year is 2008.

[5]  *See* footnote 3, *supra*.

4

any other time thereafter prior to the petition date. The Debtor nevertheless conceded

that the NOI Payment represented a secured claim;[6]

- The total accrued interest on the tax certificates should be $10,690.20 as of the

  petition date, not $13,183 as claimed by Adair; and

- The $3,125 claimed by Adair as "expenses," consisting of the $3,000 paid to the

  Summit County Fiscal Officer with the Notice of Intent (the "Prosecutor's Fee") and

  $125 for postpetition attorneys' fees (collectively with the Prosecutor's Fee, the

  "Expenses"), should be allowed as a general unsecured claim, not a secured claim.

On March 5, 2019, Adair filed its Response to Debtor's Objection to Claim (Docket No.

32) (the "Response").

The Court held a non-evidentiary hearing on the Objection to Claim and the Response on

April 11, 2019. The parties agreed that the Objection to Claim raised only legal issues and no

disputed issues of material fact. On April 17, 2019, the Court entered a scheduling order

pertaining to Adair's Objection to Claim (Docket No. 44) (the "Scheduling Order"), which

directed the parties to brief their legal arguments about the Claim and Objection to Claim and to

stipulate to all material facts necessary to consider those arguments.

On April 26, 2019, the parties filed their Stipulation of Facts (Docket No. 46) (the

"Stipulations").

On May 16, 2019, Adair filed a Supplemental Response to the Debtor's Objection to

Claim Number One (Docket No. 53) (the "Supplemental Response"). Adair asserted that

pursuant to Ohio's tax certificate statute, 18 percent interest accrues on the $4,435.86 delinquent

---

[6] However, in his reply brief, the Debtor takes the inconsistent position that Adair's claim on account of its NOI Payment should be allowed only as an unsecured claim in addition to non-interest-bearing. (*See* Docket No. 55 at 2-3.)

property taxes paid by Adair when it requested the Summit County Prosecutor to commence a foreclosure action, even if Adair had not recorded a supplemental tax certificate or other notice. Adair also asserted that the accrued interest should total $13,183.47 and that Adair's $3,125.00 in expenses should be allowed as a secured claim.  Adair dismissed the Debtor's objection to its interest calculation on the ground that the Debtor did not make clear why it believed the figure should be limited to $10,692.20.  (*See* Docket No. 32 at 4.)  Adair assumed that the discrepancy must somehow relate to the Debtor's argument that the NOI Payment did not accrue interest. While criticizing the Debtor's lack of explanation, Adair also failed to show its work on the interest calculation, either in the Claim itself or its Response and other briefs.

On May 31, 2019, the Debtor filed a reply to Adair's Supplemental Response (Docket No. 55) (the "Reply").  The Debtor's Reply restated, clarified, and presented additional grounds for his Objection to the Claim.  The Debtor reiterated his argument that Adair's claim for NOI Payment reimbursement should not bear interest.  Adding a new argument, the Debtor also contended that that claim should not be allowed as a secured claim.  The Debtor based both arguments on the fact that Adair did not record either an amended Tax Certificate or some other notice or memoranda regarding the NOI Payment in the Summit County land records.  The Debtor attached two exhibits displaying his interest calculations purporting to show that the correct total amount of interest is $10,690.20.  Finally, the Debtor urged the Court to sustain his objection to Adair's Expenses in the Claim, totaling $3,125, on the grounds that they were unreasonable.

On June 7, 2019, Adair filed a reply to the Debtor's Reply (Docket No. 57) (the "Sur-Reply").  In its Sur-Reply, Adair expanded upon its argument in favor of collecting 18 percent interest on the $4,435.86 delinquent property taxes, asserting that Adair was never required to perfect its lien or record another tax certificate, an amended certificate, or other notice.  Adair

6

also argued that $3,000 of its original claim for $3,125 in Expenses was a secured claim, was reasonable, and did not need to be perfected or recorded.

On May 13, 2020, Adair filed an unsolicited second supplemental response to the Debtor's Objection to the Claim (Docket No. 81) (the "Second Supplemental Response"). In the Second Supplemental Response, Adair plowed the same field as before in support of its Claim, offering different authorities, rationales, and insights.

## LEGAL ANALYSIS

I. **Adair's Claim Shall Be Allowed As of the Petition Date Pursuant to the Substantive Ohio Law Governing Property Tax Certificates To the Same Extent Adair Would Be Entitled to Judgment In a State Court.**

A. **Ohio's Tax Certificate Statute.**

The Bankruptcy Code defines a "claim," in relevant part, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). However, subject to a few exceptions, the substantive law that determines property rights and legal claims is applicable state law. *See Butner v. United States*, 440 U.S. 48, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1978). "Absent a prior state court determination, a bankruptcy court must place itself in the shoes of the state court judge and [liquidate claims] under the applicable state law." *In re Thompson*, 420 B.R. 763, 766 (Bankr. S.D. Ohio 2009).

In his Objection to Claim, the Debtor asserts three grounds to reduce or modify the Claim. He asserts that (i) the NOI Payment should not accrue interest because Adair did not record "a tax certificate lien" with respect to that payment; (ii) Adair's interest calculation is overstated; and (iii) the claims for reimbursement of attorneys' fees should be allowed only as unsecured. In his Reply, the Debtor supplemented his arguments, contending that the claim for reimbursement of the NOI Payment be allowed as unsecured only as well as non-interest

7

bearing, and that Adair's claim for attorneys' fees is unreasonable. Ultimately, however, the parties' arguments can be reduced to two primary questions: (i) what portion of the claim is secured, and (ii) how much interest accrued on the Claim as of the petition date? The court will answer these central questions by analyzing and applying the critical provisions of chapter 5721 of the Ohio Revised Code that govern the claims and rights Adair acquired when it purchased its tax certificates from the Summit County Treasurer and undertook to collect them.

The Ohio delinquent lands statute, chapter 5721 of the Ohio Revised Code,[7] is dense but systematic. The statute allows Ohio municipalities to sell the rights to collect delinquent taxes, bringing in revenue and shifting the risks of delayed collection and non-collection to private investors, such as Adair. The rights of the state and its taxing districts become evidenced by "tax certificates," and the purchasers of such certificates, in most material respects, step into the shoes of those taxing authorities. The certificate holder acquires the right to foreclose upon the property, subject to certain procedural rights and timing requirements, as set forth in Section 5721.37. The owner of the parcel retains the right to redeem it free and clear of the tax certificate pursuant to the process established in Section 5721.38. If the county prosecutor or the certificate holder commences a foreclosure action against the certificate parcel and that action proceeds to judgment, the court conducting the action is to enter a judgment including the damages components enumerated in Section 5721.39.

---

[7] As the Court of Appeals for the Sixth Circuit observed in another tax certificate case, "it is important to note what version of the Ohio Revised Code is being referenced. The version of the O.R.C. applicable to this case is the version effective on [both November 15, 2016, and October 27, 2017], the date[s] the tax certificate[s] [were] purchased." *Plymouth Park Tax Services v. Bowers (In re Bowers)*, 759 F.3d 621, 623 n.1 (6th Cir. 2014); *see also CapitalSource Bank FBO Aeon Fin., L.L.C. v. Donshirs Dev. Corp.*, No. 99032, 2013 WL 1697492, at *5 (Ohio Ct.App. April 18, 2013) (stating that the trial court "erred" when it applied the version of the O.R.C. effective at the time of foreclosure instead of the version effective at the time the tax certificate was purchased); *Eastwood Local School Dist. v. Eastwood Educ. Assn.*, 172 Ohio App.3d 423, 875 N.E.2d 139, 143 (2007) ("Except where a contrary intent is evident, the parties to a contract are deemed to have contracted with reference to existing law.") The Ohio Revised Code referenced in this Memorandum Decision is the version in effect on November 15, 2016, which had been last previously amended effective on September 28, 2016, and was not amended at any time thereafter on or before October 27, 2017.

**B.     Adair's Claim Shall Be Allowed Based on Adair's Right to a Judgment Under the Tax Certificate Statute.**

After analyzing Ohio's delinquent lands statute, and in particular the subchapter concerning tax certificates, O.R.C. §§ 5721.30 to 5721.46 (the "Tax Certificate Statute"), the Court concludes that the bankruptcy claim held by a tax certificate holder that had initiated the foreclosure process before the parcel owner's bankruptcy filing is equal to the judgment the certificate holder would be entitled to pursuant to Section 5721.39(A) as of the parcel owner's petition date. That statute defines the judgment a tax certificate holder may obtain when foreclosing on the parcel, and also defines the bankruptcy claim regardless of whether the certificate holder obtained a prepetition judgment.

Of course, when a tax certificate holder obtains a prepetition judgment, its bankruptcy claim is predetermined and the Bankruptcy Court is required to accord that judgment the full faith and credit to which it is entitled. Judgments of the Ohio state courts "have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of" Ohio. 28 U.S.C. § 1738.

However, even in cases like this one where the tax certificate holder has not yet obtained a judgment, Section 5721.39(A) provides the substantive law that defines the tax certificate holder's claim because it defines the judgment the certificate holder is entitled to on account of the tax certificate. Therefore, it also defines the tax certificate holder's bankruptcy claim against the parcel owner who has become a debtor in bankruptcy. *In re Thompson*, 420 B.R. at 766.

The Court is aware that other opinions from this district have relied instead on Section 5721.38 for the definition of a tax certificate holder's bankruptcy claim. *See In re Slade-Lanier*, 2014 WL 2565919 (Bankr. N.D. Ohio Jun. 6, 2014) and *In re Ange*, 2014 WL 2565916 (Bankr. N.D. Ohio Jun. 6, 2014) (both Harris, J.). Those opinions, published the same day and

9

using identical language, held that a tax certificate holder's claims depend on the Tax Certificate Statute's definition of a parcel owner's price to redeem a tax certificate. This Court declines to follow *Slade-Lanier* and *Ange* with respect to that specific decision. The distinction between *Ange* and *Slade-Lanier*, on the one hand, and this case on the other, may be derived in part by differences in the nature of the specific dispute between the parties, how the claims and objections were prosecuted by counsel, and the comparative postures of the matters before the Courts. Neither *Slade-Lanier* nor *Ange* consider Section 5721.39. This may be so because the parties did not argue its relevance. Moreover, the practical distinction between Sections 5721.38 and 5721.39 may not have altered the result in those cases.[8] In addition, those cases involved claim objections asserted after a chapter 13 plan had been confirmed and that fact may have altered the issues before the court in those cases. Indeed, in *Slade-Lanier* the debtor's confirmed chapter 13 plan was found to have conclusively defined the allowed claim. *In re Slade-Lanier*, 2014 WL 2565919 at *8-9 (relying on *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010)). Those circumstances distinguish *Slade-Lanier* and *Ange* from the facts of this case and the specific claim objection at issue here. For the reasons set forth herein, the Court concludes that the proper resolution of all of the claim components in dispute here compel the application of Section 5721.39 instead of Section 5721.38. While the right to redeem a tax certificate describes the parcel owner's prebankruptcy rights, it is the certificate holder's right to a judgment that defines its bankruptcy claim against a parcel owner debtor.

The Court acknowledges the difficulty of interpretating and applying this extraordinarily complex state statute. It will examine that statute comprehensively to identify and delineate the

---

[8] Another opinion from the Southern District of Ohio, interpreting an earlier version of the Tax Certificate Statute, appears to rely on both sections, quite likely because of their similarities. *In re McLemore*, 426 B.R. 728, 746-47 (Bankr. S.D. Ohio 2010).

10

elements of a tax certificate holder's claim when the parcel owner is a bankruptcy debtor in order to resolve this case and also provide guidance for parties in other cases involving tax certificate claims that may come before the Court.[9]

As *Ange* and *Slade-Lanier* explain, Section 5721.38(A) permits a parcel owner to redeem a tax certificate *prior to the initiation of the foreclosure process*[10] by paying the aggregate certificate redemption price of all outstanding tax certificates, which, as defined by the Tax Certificate Statute, includes the principal amounts stated on the face of each certificate plus interest at the rate stated on each certificate from the date each certificate was issued to the date each certificate is redeemed in full. O.R.C. § 5721.30(F). When the foreclosure process has not been initiated prepetition, this calculation prescribed by Section 5721.38(A) would also serve to define a tax certificate holder's bankruptcy claim.

However, Adair has initiated the foreclosure process and, in fact, the Summit County Prosecuting Attorney commenced a foreclosure action before the Debtor filed his bankruptcy petition. After foreclosure proceedings have been initiated, the certificate redemption price, as defined by the Tax Certificate Statute, is inadequate to define the tax certificate holder's bankruptcy claim. The initiation of foreclosure brings with it additional costs and often higher interest rates that the certificate holder is legally entitled to recover.

---

[9] This analysis is complex and time consuming. Yet the dispute between the Debtor and Adair in this case accounts for as little as $2,500 in interest plus the determination of whether another $7,500 should be allowed as secured or unsecured. The Court seeks to lay an established precedential groundwork for other litigants, in particular in other consumer bankruptcy cases, to minimize both the time and cost of litigating these issues.

[10] The Court will use the phrase "initiation of the foreclosure process" or any similar formulation to refer to a tax certificate holder's filing with the county treasurer of either a request that the county prosecutor commence a foreclosure action or a notice that it intends to file a foreclosure action with a private attorney, pursuant to O.R.C. § 5721.37(A)(1). Either of these initial steps alters the rights of both the tax certificate holder and the parcel owner. However, this initiation of the foreclosure process precedes and is not identical to the commencement of a foreclosure action in state court, whether by the prosecuting attorney or a private attorney.

11

Most of these increased costs are borne by the parcel owner whether he seeks to redeem the tax certificates after foreclosure has been initiated or whether a foreclosure judgment is entered against him. However, a foreclosure judgment necessarily carries a higher price tag than a prejudgment redemption. Moreover, the decision to file bankruptcy entitles the certificate holder to a bankruptcy claim equal to the judgment it is entitled to in state court, regardless of whether a state court judgment was entered prepetition.

To understand why this is so, the Court compares the components of a tax certificate holder's rights under two separate sections of the Tax Certificate Statute: Section 5721.38(B) (postforeclosure redemption) and Section 5721.39(A) (foreclosure judgment). The two sets of claim components are similar. Both include (i) the certificate redemption prices for *all* outstanding tax certificates (which a foreclosing tax certificate holder must acquire and consolidate), O.R.C. §§ 5721.38(A), (B)(1), and 5721.39(A)(1)); (ii) interest at 18 percent per annum on each certificate after the initiation of the foreclosure process, regardless of what interest rate appears on the face of the tax certificates themselves, O.R.C. §§ 5721.38(B)(2), and 5721.39(A)(2); and (iii) either the prosecuting attorney's statutory fee for conducting a foreclosure action, plus interest thereon, O.R.C. §§ 5721.38(B)(3), and 5721.39(A)(5) and (D)(2)(d), or the reasonable attorney's fees paid by the tax certificate holder to a private attorney for prosecuting a foreclosure action to judgment. O.R.C. §§ 5721.38(B)(4), 5721.371, and 5721.39(A)(5). Both sections of the Tax Certificate Statute also include provisions regarding other costs and fees of the proceeding allocable to the certificate parcel as may be determined by a court or board of revision.

However, the foreclosure judgment statute, Section 5721.39, which this Court relies upon to determine Adair's allowed bankruptcy claim, provides tax certificate holders with additional recoveries that are appropriately included in their bankruptcy claim even though they are not

12

necessary when a parcel owner redeems the tax certificates pursuant to Section 5721.38. A tax certificate holder's foreclosure judgment includes the right to recover the amount of the noncertificated property taxes paid by the tax certificate holder upon commencing the foreclosure process pursuant to Section 5721.37(B)(2), plus 18 percent interest per annum on that amount until the judgment is satisfied. O.R.C. § 5721.39(A)(3). This is the amount Adair refers to in its Claim as the NOI Payment. Having paid these property taxes on the Debtor's account, it is intuitive that reimbursement for those taxes should form a component of Adair's secured bankruptcy claim. Indeed, the Tax Certificate Statute vindicates that intuition by including that reimbursement to the tax certificate holder when its foreclosure action is reduced to judgment. The judgment any creditor would be entitled to against a bankruptcy debtor if a state court had an opportunity to reduce the claim to judgment is the proper measure of the creditor's bankruptcy claim as of the petition date, *In re Thompson*, 420 B.R. at 766, unless the Bankruptcy Code expressly provides for an exception to claim allowance in 11 U.S.C. § 502(b).

The precedent of *Ange* and *Slade-Lanier* compels the Court to consider why the property tax reimbursement is not included in the parcel owner's postforeclosure redemption price pursuant to Section 5721.38(B)(1)-(5) and whether that exclusion is a basis to exclude the property tax reimbursement from a certificate holder's bankruptcy claim. After a comprehensive examination of mechanics of the Tax Certificate Statute, the Court concludes it is not.

Section 5721.38(B) permits the parcel owner to redeem tax certificates postforeclosure, but outside of bankruptcy when no automatic stay applies under 11 U.S.C. § 362(a) that would restrict the collection of prepetition tax claims in the ordinary course. In such a nonbankruptcy environment, another mechanism must account for the noncertificated property taxes the certificate holder advanced when it initiated foreclosure since Section 5721.38(B) does not include those taxes as part of the certificate redemption price. The answer is found in the

13

hanging paragraph of Section 5721.38(B), which provides that following the parcel owner's

redemption, the county treasurer shall reimburse the tax certificate holder for certain amounts,

including "interest at the rate of eighteen percent per year on amounts paid under the divisions

(B)(2) [*i.e.,* noncertificated property taxes that were advanced by the tax certificate holder to the

county treasurer] and (3) of section 5721.37 [*i.e.,* the foreclosure fee paid to the county

prosecutor]." The Court sees no reasonable explanation for the statute to require the county

treasurer to pay interest to the tax certificate holder on account of the noncertified property taxes

and county prosecutor fee it paid but that the county treasurer would also refund the principal

amount of those taxes and fees.[11]

Therefore, when a parcel owner redeems a tax certificate, the taxing authorities refund

the tax certificate holder not only the redemption price paid by the parcel owner through the

taxing authority as a conduit, but also the noncertificated property taxes advanced by the tax

certificate holder in conjunction with initiating a foreclosure proceeding. Nevertheless, the Tax

Certificate Statute does not require the parcel owner to pay those noncertificated property taxes

upon redemption of the tax certificates, even though they would be included in a certificate

holder's foreclosure judgment pursuant to Section 5721.39(A). The Court presumes that having

refunded those property taxes previously advanced by the tax certificate holder, the county

treasurer would account for those taxes by treating them as remaining unpaid, due by the parcel

owner at the appropriate time, and remaining as a lien on the parcel until paid. Absent a

bankruptcy filing, no automatic stay restricts the reimposition of the property taxes against the

parcel owner. Therefore, in a nonbankruptcy environment, the statute governing redemption of

tax certificates only accomplishes the redemption; it does not bring the parcel owner current on

---

[11] Indeed, the county prosecutor's fee may also be included in the parcel owner's redemption price as one of the
"costs and fees" related to the foreclosure process. O.R.C. § 5721.38(B)(5).

14

all taxes that may be due on the parcel as would be necessary and customary at a foreclosure sale. However, the tax certificate holder is nevertheless made whole in the same amount as it would be with a foreclosure judgment, albeit from different channels and with a different process.

Although both certificate redemption under Section 5721.38(B) and certificate foreclosure judgment under Section 5721.39(A) lead to the same place, it is the latter that defines both a tax certificate holder's right to state court judgment and its bankruptcy claim. The Debtor in this case did not redeem the tax certificates before filing his bankruptcy petition and the taxing authorities have not refunded Adair's NOI Payment. Adair retains its legal rights to payment for all of the component parts of the judgment it is entitled to under Section 5721.39(A). Limiting Adair's claim to the Debtor's redemption price only, as if the Debtor had redeemed the tax certificates prior to a bankruptcy proceeding, would shortchange Adair or any tax certificate holder compared to the amount it would recover from the parcel owner/debtor in a foreclosure proceeding.

## II.    All Elements of Adair's Claim are Secured and Entitled to Interest.

### A.    Adair Was Not Required to Record or Re-Record Its Tax Certificate With the County Recorder to Preserve Its Secured Status or Become Entitled to Interest on the NOI Payment.

The Debtor argues that Adair should not be allowed to collect 18 percent interest—or any interest—on the NOI Payment because the NOI instrument was not recorded in the county land records and therefore not perfected. However, a tax certificate holder is not required to record any such document or instrument.[12] "A certificate holder or the county treasurer *may* record the tax certificate or memorandum thereof in the office of the county recorder of the county in which

---

[12] While tax certificates are not required to be recorded in county land records to perfect a lien on the real property, the county treasurer or fiscal officer is required to record tax certificates in a tax certificate register upon sale. O.R.C. §§ 5721.32(E) and 5721.33(G).

15

the certificate parcel is situated, as a mortgage of land . . . ." O.R.C. § 5721.35(B)(1) (emphasis added).  The Tax Certificate Statute does not make recording the tax certificate a necessary step for the tax certificate holder to be secured in the subject parcel in the first place, or perfected as to the rights of other third parties.  It certainly does not require a second recording after the tax certificate holder pays the county treasurer the amounts required under Section 5721.37(B) to acquire and consolidate all outstanding tax certificates and other noncertificated property tax claims as a prerequisite to making a request for foreclosure or giving notice of intent to foreclose under Section 5721.37(A).

Instead, the secured status of a tax certificate holder under Ohio law is derived from an assignment of the secured rights originally held by the State and its taxing districts with respect to unpaid real property taxes.  "Upon issuing the tax certificates, the delinquent taxes that make up the certificate purchase price are transferred, *and the superior lien of the state and its taxing districts for those delinquent taxes is conveyed intact to the certificate holder or holders.*" O.R.C. § 5721.32(E) (sale of tax certificates by auction); O.R.C. § 5721.33(G) (identical language for negotiated sale of tax certificates) (emphasis added).  "Upon the sale and delivery of a tax certificate, the tax certificate vests in the certificate holder the first lien previously held by the state and its taxing districts under section 5721.10 of the Revised Code for the amount of taxes, *assessments, interest, and penalty* charged against a certificate parcel."  O.R.C. § 5721.35(A) (emphasis added).  A tax certificate lien may only be perfected by possession of the certificate, registering the tax certificate with the county treasurer or fiscal officer in the name of the secured party, or recording the name of the secured party in the county treasurer or fiscal officer's tax certificate register.  O.R.C. § 5721.35(B)(2)(a)-(c).  No party has disputed that Adair is the holder of the certificates it attached to its Claim or that the Tax Certificates were properly registered with the Summit County Fiscal Officer.  Thus, although Adair had the discretion to

16

record the Tax Certificates in the county land records, where mortgages are recorded and perfected, it was not required to do so to preserve the secured status of its claim(s). This tax lien extends to the amounts Adair later paid the county treasurer as required by Section 5721.37(B) to proceed with a request for foreclosure. O.R.C. § 5721.35(A).

The Tax Certificate Statute provides that all of these claims, with interest, are properly paid from the proceeds of the foreclosure sale of the parcel. O.R.C. § 5721.39(D). The statutory distribution scheme for the proceeds from the sale of certificate parcels in Section 5721.39(A) and (D) either creates or reinforces the substantive right to which tax certificate holders becomes entitled when the state's first lien for property taxes pursuant to Section 5721.10 is transferred intact to them pursuant to Section 5721.35(A) when they purchase a tax certificate. It reserves to the certificate holder the right to recover its costs from a specific item of property, rather than from the owner of the property personally or from any other person. This is fundamentally what a lien is. The Tax Certificate Statute's payment scheme for the distribution of the sale proceeds also meets the Bankruptcy Code's definition of a lien, which is a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37).

**B.      After Initiation of the Foreclosure Process, a Tax Certificate Holder's Entire Claim Earns Interest at 18 percent By Statute.**

While the Tax Certificates bore interest at two different rates, the larger 2016 Tax Certificate at 12.25 percent and the smaller 2017 Tax Certificate at 18 percent, Adair properly claimed 18 percent interest from and after the date the NOI Payment was made, May 30, 2018. The rate of interest paid on a tax claim in a case under the Bankruptcy Code is the rate determined under applicable nonbankruptcy law. 11 U.S.C. § 511(a); *see also In re Cortner*, 400 B.R. 608, 611-612 (Bankr. S.D. Ohio 2009). The judgment that would be rendered on the foreclosure of the subject parcel would include "[i]nterest on the certificate purchase prices of all

17

certificates *at the rate of eighteen per cent* per year for the period beginning on the day on which the payment was submitted by the certificate holder [along with either its request for foreclosure or its notice of interest to foreclose]." O.R.C. § 5721.39(A)(2) (emphasis added).

The same 18 percent rate of interest applies to the foreclosure initiation payment Adair refers to as the NOI payment. Adair, or any other tax certificate holder, would be entitled to a judgment that includes "[t]he amount paid under division (B)(2) of section 5721.37 of the Revised Code [*i.e.*, the noncertificated property taxes paid, which Adair labels the "NOI Payment"], plus interest *at the rate of eighteen per cent* per year for the period beginning on the day the certificate holder filed a request for foreclosure or a notice of intent to foreclose." O.R.C. § 5721.39(A)(3) (emphasis added). The so-called NOI Payment claimed by Adair is defined by the Tax Certificate Statute as "any taxes, assessments, penalties, interest, and charges appearing on the tax duplicate charged against the certificate parcel that is the subject of the foreclosure proceedings and that are not covered by a tax certificate." O.R.C. § 5721.37(B)(2). Thus, the Tax Certificate Statute provides for, as part of a tax certificate holder's claim, a fixed statutory interest rate of 18 percent on the payments tax lien certificate holders make to the county taxing authorities when they file a request for foreclosure or notice of intent to foreclose, even if some or all of the underlying tax certificates, whether held by the foreclosing certificate holder or others, bore interest at lower rates on the face of the certificate.

**C.    Adair's Claim for Reimbursement of the Prosecutor's Fee Is Allowed as a Secured Claim Pursuant O.R.C. § 5721.39(A)(5) and (D)(1); the Remaining $125 of the Expenses Arose Postpetition and Will Be Disallowed Without Prejudice as of the Petition Date.**

In his Objection to Claim, the Debtor does not object to the allowance of the Expenses, but objects to allowing them as secured claims. (Docket No. 28 at 2.) In his Reply, the Debtor advances additional legal arguments claiming that the Expenses should be disallowed in whole

18

or part because they are unreasonable and/or not authorized by a state court order. (Docket No. 55 at 3-4.)

The primary component of Adair's Expenses is the $3,000 Prosecutor's Fee, which is "the amount prescribed by the [Summit C]ounty prosecuting attorney to cover the prosecuting attorney's legal costs incurred in the foreclosure proceeding." O.R.C. § 5721.37(B)(3). The Debtor, in its Reply, relies on Section 5721.371 to suggest that the Prosecutor's Fee is subject to a reasonableness determination. However, Section 5721.371 does not apply to the fees charged by county prosecutors; it applies by its express terms only to "private attorney's fees." *Id.*

The statutory intent to condition only private attorneys' fees with the reasonableness standard is made clear in the Tax Certificate Statute's section governing tax certificate redemption. When a parcel owner (outside of bankruptcy) seeks to redeem tax certificates after foreclosure has been initiated, it must pay, *inter alia*, *either* the prescribed county prosecutor's fee if the tax certificate holder filed a request for foreclosure, O.R.C. § 5721.38(B)(3), *or* "[r]easonable attorney's fees in accordance with section 5721.371 . . . if the certificate holder retained a private attorney to foreclose the lien," O.R.C. § 5721.38(B)(4). While the section governing foreclosure judgments, and therefore postforeclosure bankruptcy claims, does not expressly cross-reference Section 5721.371, it does provide for *either* the actual "fees and costs of the prosecuting attorney," plus interest, [13] or "the fees and costs of the private attorney representing the certificate holder." O.R.C. § 5721.39(A)(5). The reasonableness determination only applies to the latter, as unambiguously stated in Section 5721.371.

The only portion of the Expenses that represents private attorney fees is the $125 portion that is *not* the Prosecutor's Fee. The Debtor correctly observed that the Claim, standing alone,

---

[13] This provision of the Revised Code would further allow interest on the Prosecutor's Fee. However, Adair's proof of claim did not seek interest on this component and the Court endeavors only to allow or disallow the claim as filed.

19

said little or nothing about the origin of the remaining $125 of the Expenses. The request for foreclosure, included with the Claim, shows only the $3,000 Prosecutor's Fee. (Claim Ex A.) When discussing the Expenses, the Stipulations mentioned only the Prosecutor's Fee. (Stipulations ¶ 8.) In its Supplemental Response, Adair conceded that the remaining $125 of the Expenses is on account of postpetition legal fees. (Docket No. 53 at 4.) Adair appears to drop the $125 postpetition legal fees from its Claim in its Sur-Reply and Second Supplemental Response. Therefore, the Court will disallow Adair's $125 claim postpetition legal fees, without prejudice, as is appropriate since the Court is only determining Adair's allowed claim as of the petition date.

The Prosecutor's Fee is also a secured claim just as in the remainder of Adair's allowed Claim. The Tax Certificate Statute provides that the judgment to which a certificate holder is entitled should include "[f]ees and costs incurred in the foreclosure proceeding instituted against the parcel, including, without limitation, the fees and costs of the prosecuting attorney represented by the fee paid under division (B)(3) of section 5721.37 of the Revised Code." O.R.C. § 5721.39(A)(5). The Debtor advances no coherent legal argument why this should be treated differently than the other components of the judgment enumerated in Section 5721.39(A)(1)-(5). In fact, the Prosecutor's Fee may even have *first* priority in distribution from the sale proceeds. Section 5721.39(D)(1) provides that "[t]he fees and costs incurred in the proceeding filed against the parcel pursuant to section 5721.37 of the Revised Code shall be paid first, including … the county prosecutor's costs covered by the fee paid by the certificate holder under [Section 5721.37(B)(3)]." O.R.C. § 5721.39(D)(1). These statutory rights represent amounts included in Adair's claim on the petition date, even if the judgment had not yet been entered by a state court, in the same manner that a secured creditor whose security agreement provides for the costs of collection is entitled to those amounts, on a secured basis,

20

even if the borrower files a bankruptcy petition before any state court enters a judgment liquidating the amounts of such collection costs.

III.    **Adair's Interest Calculation on the Tax Certificates Is Not Well Explained and Both Parties' Calculations Appear Mathematically Inaccurate.**

Neither party addresses the mathematical interest calculation with any precision, but leaves the Court with sufficient information and evidence to make its own calculations based on the Tax Certificate Statute.

Adair fails to show its work in the Claim to explain its total interest for both the Tax Certificates at their respective interest rates and the NOI Payment on and after May 30, 2018. The Claim contains a single line item, "interest," in the amount of $13,183.47. The Court has been unable to reproduce any calculation that supports that figure. The Court's own analysis results in a finding that the figure of $13,183.47 is overstated, and therefore partially sustains the objection of the Debtor.

Adair seeks interest as of September 29, 2018, the date its proof of claim was filed and four days after the Debtor's September 25, 2018 petition date. Because the Court in this Memorandum Decision will determine the allowance of the "claim as of the date of the filing of the petition," 11 U.S.C. § 502(b), it will disallow the interest attributable to the last four days requested by Adair. The proper treatment and entitlement of Adair's claim postpetition to the date of confirmation and thereafter upon confirmation, if at all, of a chapter 13 plan will be addressed later when the Court considers Adair's objection to plan confirmation.[14]

The Debtor, while correctly arguing that Adair's interest calculation is overstated, makes several errors in his own Reply, including the exhibits thereto. The Debtor, in his first exhibit to his Reply, calculates interest on the 2016 Tax Certificate with the correct principal amount and

---

[14] *See* footnote 1.

correct interest rate, but over an incorrect date range. The Debtor commences its calculation on November 23, 2016. In fact, as stipulated by the parties, the 2016 Tax Certificate was issued to and purchased by Adair on November 15, 2016, which is the date interest began to accrue on the certificate. O.R.C. § 5721.30(J). In addition, the Debtor calculates Adair's interest on the 2016 Tax Certificate at the rate of 12.25 percent through to the September 25, 2018 petition date. This is incorrect under the Tax Certificate Statute. Adair is entitled to 12.25 percent interest until May 30, 2018, the date it made its NOI Payment to the Summit County Fiscal Officer. As already explained in Part II.B. of this Memorandum Decision, the Tax Certificates, regardless of their original certificate rates of interest, earn interest from and after the date the tax certificate holder initiates the foreclosure process at the stepped-up statutory rate of interest of 18 percent. O.R.C. §§ 5721.38(B)(2) (in the case of parcel owner redemption postforeclosure) and 5721.39(A)(2) (certificate holder's right to interest as part of foreclosure judgment).

With respect to the 2017 Tax Certificate, the Debtor's calculations in the exhibit to his Reply identifies the correct interest rate of 18 percent on the principal amount of that certificate, of $4,863.59, but mistakenly begins the calculation on November 27, 2017. In fact, as stipulated by the parties, the 2017 Tax Certificate was issued on October 27, 2017. As a result of what appears to be a simple input error, the Debtor's calculation mistakenly excludes 31 days of interest. The Debtor's interest calculation for the 2017 Tax Certificate, unlike the calculation for the 2016 Tax Certificate, does correctly run to the petition date because the certificate's stated interest rate was 18 percent. By happenstance, that interest rate matches the 18 percent statutory interest rate that applies following the NOI Payment. O.R.C. § 5721.39(A)(2). Therefore, the interest rate applicable to the 2017 Tax Certificate did not change on May 30, 2018, unlike the 2016 Tax Certificate.

The Debtor's interest calculations are too low simply because it assumed fewer days elapsed while the debt to Adair was outstanding and in one instance used the wrong interest rate. The Debtor also incorrectly excluded interest that accrued on Adair's NOI Payment at 18 percent from May 30, 2018, to the September 25, 2018 petition date. Therefore, the Court also rejects the Debtor's proposed interest calculation of $10,690.20.

**IV. The Correct Calculation of the Interest Component of Adair's Claim Is $11,964.13, and Adair's Total Allowed Claim Is $68,517.21.**

The Court calculates Adair's total allowed claim as follows, all of which will be allowed as a secured claim pursuant to the analysis in Parts I and II, above:

| Description | Amount |
|---|---|
| Principal balance of the 2016 Tax Certificate No. 6811899-16, purchased November 15, 2016. | $44,253.63 |
| Simple interest at certificate rate of 12.25 percent from November 15, 2016, to May 30, 2018 (date of NOI Payment) – 561 days | $8,332.11 |
| Simple interest at 18 percent from May 30, 2018, to September 25, 2018 (petition date) – 118 days | $2,575.20 |
| Principal balance of the 2017 Tax Certificate No. 6711899-17, purchased October 27, 2017. | $4,863.59 |
| Simple interest at 18 percent (both the certificate rate and the post-NOI Payment statutory rate) from October 27, 2017, to September 25, 2018 (petition date) – 333 days | $798.69 |
| NOI Payment (May 30, 2018) | $4,435.86 |
| Simple interest at 18 percent from May 30, 2018, to September 25, 2018 (petition date) – 118 days[15] | $258.13 |
| Summit County Prosecutor's Fee | $3,000 |
| **TOTAL** | **$68,517.21** |

---

[15] The Debtor's Reply incorrectly argued that this amount should be zero. *See* Part II.B. of this Memorandum Decision, *supra*.

23

## **CONCLUSION**

The Court concludes that Adair's allowed secured claim includes prepetition interest in the amount of 18 percent from the May 30, 2018 date of its Notice of Intent to Foreclose (or, more accurately, its request for foreclosure) on both the NOI Payment itself and the tax certificates upon which it sought foreclosure. One of those tax certificates, the 2017 Tax Certificate, already had a certificate rate of 18 percent, resulting in no change to its interest rate when the foreclosure process was initiated. The 2016 Tax Certificate, which bore interest at 12.25 percent on its face, enjoyed a statutory step-up in interest from the date the NOI Payment was made until the petition date. The result, based on the Court's calculations in Part IV of this Memorandum Decision, is that Adair's total prepetition interest is allowed in the amount of $11,964.13. This interest claim merges with the Tax Certificate and is secured by the state's tax lien that was assigned to Adair pursuant to the Tax Certificate Statute when it purchased the Tax Certificates.

The Court further concludes that Adair properly claimed that $3,000 Prosecutor's Fee was secured. The remaining Expenses totaling $125 constitutes a postpetition claim that will be disallowed as of the petition date. This conclusion is reached without prejudice to Adair's rights to seek postpetition fees and interest and without prejudice to the Debtor's defenses against any such claims. Adair did not seek interest on the Prosecutor's Fee even though the statute provides for it. Therefore, no interest on that fee will be allowed.

Finally, the Court concludes, pursuant to the Tax Certificate Statute, that Adair's claim for the NOI Payment (*i.e.*, the noncertificated property tax claim it purchased to initiate foreclosure) is both secured by Adair's lien on the Property and entitled to interest at 18 percent from the date Adair made that payment to the county treasurer to the Debtor's petition date.

24

The Court will enter a separate order consistent with this Memorandum Decision, sustaining in part and overruling in part the Debtor's Objection to Adair's Claim. The Court will allow Adair's claim as a secured claim in the amount of $68,517.21 as of the petition date, with no unsecured portion. The Court's order will not be deemed entered until the separate order has been docketed by the Clerk. The Clerk will also schedule a further hearing on Adair's objection to confirmation (Docket No. 32) of the Debtor's original proposed plan (Docket No. 7), and the Debtor's amended proposed plan (Docket No. 75), including, without limitation, determination of Adair's rights to postpetition fees and interest, if any, and Adair's minimum rights to treatment of its Claim under a chapter 13 plan.

# # #